**NOT FOR PUBLICATION**                                                              **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOSE A. MORALES, | : | |
|  | : | |
| Plaintiff, | : | Civil Action No. 04-5461 |
|  | : | |
| v. | : | **OPINION** |
|  | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
|  | : | |
| Defendant. | : | |

Appearances:

STANLEY G. SHEATS
Northeast New Jersey Legal Services
152 Market Street, Suite 600
Paterson, New Jersey 07505
    Attorney for Plaintiff

CHRISTOPHER J. CHRISTIE
United States Attorney
SOM RAMRUP
Special Assistant U.S. Attorney
c/o Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278-0004
    Attorney for Defendant

PISANO, District Judge.

Before the court is an appeal by Jose Morales ("Plaintiff") from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying Plaintiff's request for Disability Insurance Benefits ("DIB") and Supplemental Security Insurance ("SSI") benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § § 416(i) and 423.  The Court decides this motion without oral argument pursuant to Fed. R. Civ. P. 78, and has jurisdiction to review this matter under 42 U.S.C. § 405(g).  The record provides substantial evidence supporting the Commissioner's decision that Plaintiff is able to perform past relevant work and, therefore, is not disabled.  Accordingly, the Court affirms.

**I.     Background**

**A.     Procedural History**

Plaintiff applied for DIB and SSI benefits on October 16, 2001, alleging that he suffered from asthma, back problems and scoliosis.  (R. 263-67).[1]  The application was denied initially and on reconsideration.  (R. 267, 274).  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  On March 10, 2004, a hearing was held before Katherine C. Edgell, United States Administrative Law Judge.  The ALJ subsequently issued a decision on June 5, 2004, finding that Plaintiff was not disabled and denying SSI and DIB benefits.  (R. 12-17).  This decision became final on September 2, 2004, when the Appeals Council denied Plaintiff's request for review of the ALJ's decision.  (R. 4-6).  The appeal to this court followed.

**B.     Facts**

Plaintiff was born on January 5, 1968, and has completed a 9th grade education.  (R 18-19).

---

[1]The Administrative Record is referred to as "R. __."

He can speak, read and write English. (R. 85). His past relevant work experience includes employment as a security guard. This work generally required him to walk, stand, stoop, climb and write, type or handle small objects up to eight hours per day, and sit up to one hour per day. Plaintiff's work never involved lifting more than ten pounds. (R. 87). According to Plaintiff, he stopped working in October 2001 because of back problems, and has not been employed since that time. (R.86).

**Spinal Impairments**

The record contains reports from St. Joseph's Medical Center dated 2001 to 2003, where Plaintiff was treated for back pain and asthma. These include reports submitted by Dr. Kheyfets[2] dated between December 20, 2001 and August 14, 2003. (R. 250-262). In his reports dated April 8, 2003 and August 14, 2003, Dr. Kheyfets noted that the Plaintiff experienced back pain that was treated with medications and exercise. Plaintiff was said to have limitations in standing, lifting, walking, climbing and stooping. Dr. Kheyfets stated that the Plaintiff would be unable to work for a period of not more than six months and recommended pain management treatment with possible surgery. These records show that Plaintiff refused epidural steroid injections. (R. 249).

An MRI was administered to Plaintiff on April 22, 2002, by Dr. Rajendra Achaibar, which showed the following: small central disc herniation at L5-S1 level without significant central canal compromise; moderate lateral recess narrowing at the L5-S1 level secondary to degenerative facet disease; and degenerative facet disease also at L4-5 and L3-4 level. (R. 237).

On February 24, 2003, Plaintiff consulted Dr. Badach, who indicated that Plaintiff suffered from lower back pain, radiation to the leg, and was in moderate pain while sitting. Dr. Badach

---

[2]Dr. Kheyfets' full name is not available in the record.

3

noted that heel/toe walk was not possible, flexion of the lumbar spine was limited by pain, and straight leg raising was 40 degrees, a positive measurement.  (R. 239).

Plaintiff was also examined by Dr. Mie Mie Lin, a consultative examiner employed by the Social Security Administration, on October 17, 2002.  Dr. Lin noted that Plaintiff complained of back pain radiating to the right leg with numbness in the right toe.  (R. 213).  Dr. Lin's report show that there was no scoliosis, kyphosis or abnormality in the thoracic spine.  It was also noted that Plaintiff had flexion of 60 degrees out of a possible 90 degrees in his lumbar spine, extension of 10 degrees out of a possible 35 degrees, full lateral flexion and rotary movement of 20 degrees bilaterally out of a possible 45 degrees.  *Id.*  Plaintiff's examination by Dr. Lin showed that straight leg raising was negative bilaterally, strength was 5/5 in the upper and lower extremities, and no sensory loss or muscle atrophy was evident.  *Id.*  X-rays done during this consultation of the LS spine and hip were negative.  (R. 214).

A Physical Residual Functional Capacity Assessment form was submitted by a state agency physician, Dr. Dibella,[3] on October 28, 2002.  (R. 216).  Dr. Dibella concluded that Plaintiff was able to lift and carry fifty pounds occasionally and twenty-five pounds frequently and stand, walk and sit for six hours per eight hour day.  With respect to Plaintiff's complaints of pain, Dr. Dibella found that "[b]ased on the medical evidence in the case file, the claimant's allegations are not credible."

**Asthma**

The record shows that on October 7, 2001, Plaintiff was admitted to St. Joseph's Hospital and Medical Center, the principal diagnosis being respiratory failure with secondary diagnoses of

---

[3]Dr. Dibella's full name is not available in the record.

(1) acute exacerbation of asthma; and (2) cannabis abuse. (R. 174-178). Plaintiff was intubated in the emergency room. Plaintiff was treated with medications, was advised to give up smoking, and was prescribed Flovent, Proventil, Serevent inhaler, Prednisone and Zithromax. (R. 176-977)

In October of 2002, when meeting with Dr. Lin, Plaintiff stated he had a history of asthma. Upon examination of Plaintiff's chest and lungs, Dr. Lin noted that Plaintiff's lungs were clear on auscultation and percussion and diaphragmatic motion were both normal. Plaintiff also showed no significant chest wall abnormality. (R. 213-214).[4]

## II.     Standard of Review

To establish eligibility for disability benefits and SSI benefits, a claimant must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 382c(a)(3)(A). A person is disabled for these purposes only if his physical or mental impairments are:

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of

---

[4]Plaintiff sets forth in his summary of facts that he "suffers from depression." However, he does not appear to argue that he is unable to work as a result of his alleged depression, and depression is not given as a basis for disability in his application. (R. 86). Even if Plaintiff were argue depression as a basis for his disability, the evidence in the record does not establish a disabling mental condition. Dr. Lin notes that Plaintiff complained of depression occasionally due to neck and back pain. In his report, Dr. Kheyfets gives a minor diagnosis of depression and recommends treatment by a psychologist. At the hearing, Plaintiff testified that he was seeing a psychiatrist, and the ALJ asked Plaintiff's counsel to supplement his brief and provide the name of the psychiatrist. R. 302. By letter dated March 22, 2004, Plaintiff's counsel provided the name of a mental health provider, Dr. Feldman from Barnert Hospital, to the ALJ. By letter dated March 26, 2006, the ALJ requested Dr. Feldman's records. (R. 167). However, Dr. Barnert responded that he had no records for Plaintiff. (R. 171)

5

>whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(b).

In determining whether a claimant suffers an impairment that prevents him from engaging in "substantial gainful activity," the ALJ is required to follow a five-step sequential evaluation process. 20 C.F.R. § 416.920 (2003); *see Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 117 (3d Cir. 2000). If the ALJ finds that a claimant is or is not disabled at a particular step, the ALJ makes its determination without proceeding to the following step. *Id.* § 416.920(a)(4). If the ALJ cannot so find at a particular step, the ALJ then proceeds to consider the next step. *Id*. At the first step, the ALJ must consider whether the claimant has engaged in "substantial gainful activity" since the onset of her alleged disability. *Id*. § 416.920(a)(4)(I). If the claimant is performing "substantial gainful activity," the ALJ will find that the claimant is not disabled, regardless of the claimant's medical condition, age, education and work experience. *Id.* § 416.920(b). At the second step, the ALJ considers the severity of the impairment. *Id.* § 416.920(a)(4)(ii). The impairment must be a "severe medically determinable physical or a mental impairment that meets a duration requirement," *see* 20 C.F.R. § 416.909, or a "combination of impairments," *id.* § 416.920(c)(4)(ii), which significantly limits the claimant's ability to engage in basic work activities. *Id.* § 416.920(c). Since the claimant bears the burden of establishing these requirements, her failure to meet this burden automatically results in denial of benefits, and the ALJ's analysis necessarily ends there. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n. 5 (1987).

If the claimant satisfies her initial burden, step three requires the ALJ to consider whether claimant's impairment is equal to or exceeds one of the impairments listed in Appendix 1 of the

regulations.  20 C.F.R. § 416.920(a)(4)(iii); *see also* Appendix 1, Subpart P, Regulation No. 4.  If the claimant meets or exceeds a listed impairment, she is presumed to be disabled and is automatically entitled to disability benefits.  *Id.* § 416.930(d).  If the claimant does not meet or equal a listed impairment, the analysis proceeds to step four.  *Id.* § 416.920(e).

At step four, the ALJ considers the claimant's residual function capacity ("RFC") and past relevant work. *Id.* § 416.920(a)(4)(iv).  The claimant's impairment must "prevent" the claimant from performing her past relevant work.  *Id.* § 416.920(f).  If the claimant is found to be capable of returning to her previous line of work, she is not disabled and thus not entitled to disability benefits.  *Id*.  If the claimant cannot return to her previous line of work, then the ALJ's analysis proceeds to step five.

At step five, the ALJ considers the claimant's residual functional capacity and her age, education, and work experience to determine if the claimant can make an adjustment to other work. *Id*. 416.920(g).  While claimant bears the initial burden of demonstrating that her impairment prevents her from returning to her past relevant, work, *see Wallace v. Sec'y of Health and Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983), the burden at this step shifts to the Commissioner, requiring the Commissioner to demonstrate that the claimant is capable of performing other, substantial, gainful work.  *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner cannot satisfy this burden, the claimant is disabled and shall receive social security benefits.  *Bowen*, 482 U.S. at 146-47 n.5.

**III.   Discussion**

**A.     The ALJ's Analysis**

As required, the ALJ undertook the five-step analysis of the sequential evaluation process.

7

At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial, gainful activity since the alleged onset of disability, October 4, 2001.  (R. 12-13).  The ALJ then determined, at step two, that Plaintiff suffered from several medically determinable impairments, including asthma, a small herniated disc at L5-S1, degenerative disc disease and a history of Percocet, cannabis and opiate abuse.  (R. 13).  The ALJ stated that these impairments are "severe" within the meaning of the Regulations.

At step three, the ALJ found that while the medical evidence established that these medically determinable impairments were severe, it did not demonstrate findings that met or equaled in severity one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 ("the Listings.") (R. 13).  Plaintiff disputes the ALJ's findings at step three.

The ALJ proceeded to step four of the analysis, which focuses on whether the Plaintiff's residual functional capacity sufficiently permits him to resume his previous employment.  *See* 20 C.F.R.§ 404.1520(e).  If the claimant is found to be capable of returning to his previous line of work, then he is not "disabled and not entitled to disability benefits."  *Id.*  A comparison between the Plaintiff's residual functional capacity and the requirements of his past relevant work is necessary to satisfy step four.  *See* 20 C.F.R. § 404.1520(e)-(f); *Burnett v. Commissioner of Social Security Administration*, 220 F. 3d 112, 120 (3d. Cir. 2000).  The ALJ determined that Plaintiff met step four of the analysis because his residual functional capacity permitted him to perform his pasts relevant work.

In reaching this conclusion, the ALJ noted that she carefully considered all of the medical opinions in the record regarding the severity of the Plaintiff's impairments.  *See* 20 C.F.R. § 404.1527.  The ALJ noted that Plaintiff was admitted to St. Joseph's Hospital and Medical Center

in October 2001 for an acute exacerbation of asthma where he was treated with various medications with improvement noted. The ALJ also noted that records submitted by St. Joseph's Medical Center dated 2001 to 2003 show that Plaintiff was treated for both back pain and asthma, was prescribed various medications, but refused epidural steroid injections.

Dr. Lin's consultative examination of October 2002 was also considered by the ALJ, which reported that Plaintiff was diagnosed with neck, right shoulder, back, right leg and right hip pain, a history of asthma and a complaint of depression. (R. 211-14). The ALJ pointed out that, in that examination, it was noted that Plaintiff was in no acute distress, had a normal gait and station and had no difficulty getting dressed or undressed or getting on or off the examination table. His skin, head, neck, eyes, ears, nose, throat, chest, heart, abdomen, joints an extremities were normal. Plaintiff's lungs were clear on auscultation and percussion and showed no evidence of any rales, rhonchi or wheezing. Plaintiff had decreased range of motion of the lumbar spine with negative straight leg rasing and full 5/5 strength in both upper and lower extremities. The neurological examination was normal with no evidence of any motor or sensory deficits. An x-ray of the lumbar spine was normal. Dr. Lin noted that Plaintiff had moderate limitations in lifting heavy objects, walking long distances and traveling, and Plaintiff was given a fair prognosis. (R. 214).

The ALJ also considered a Physical Residual Functional Capacity Assessment form submitted by state agency physician Dr. Dibella dated October 2002, where it was noted that Plaintiff was able to lift and carry fifty pounds occasionally and twenty-five pounds frequently and stand, walk and sit for six hours per eight hour day. (R. 216-21). Reports submitted by Dr. Kheyfets, dated April and August 2003, were also examined by the ALJ, in which Dr. Kheyfets noted that Plaintiff was unable to work for a period of not more than six months and recommended

9

pain management treatment with possible surgery. (R. 249-50).

Consideration was also given by the ALJ to Plaintiff's subjective complaints along with the objective medical evidence summarized above, and the ALJ found that the medical evidence did not substantiate the allegations of disabling asthma, back and joint pain. *See* 20 CFR §§ 404.1529 and 416.929, and Social Security Ruling 96-7p (R. 14). Although the ALJ found that while the objective medical evidence reveals impairments that could have reasonably caused the symptoms Plaintiff alleged, "claimant's symptoms are not of such intensity, frequency or duration as to preclude substantial gainful activity." (R. 15). The ALJ pointed out that while Plaintiff has a history of asthma, there is no evidence of recurrent emergency room treatments or hospitalizations for this condition. The ALJ also noted that while there is a history of back pain with a small disc herniation, Plaintiff has never been hospitalized or undergone surgery for this condition.

The ALJ also concluded that Plaintiff's allegations of disabling impairments were not supported by his own actions or statements. "The claimant testified that he does some cooking, shops, drives locally, socializes with family, reads and watches television. Based on these statements, it appears that the claimant is capable of leading an active existence despite his allegations." (ALJ Opinion, R. 15). The ALJ further found that "claimant's symptoms are not of such intensity, frequency or duration as to preclude substantial gainful activity." *Id.*

The ALJ concluded that Plaintiff can perform light work with no exposure to concentrated respiratory irritants. In analyzing whether or not the Plaintiff could perform any of his past relevant work, the ALJ noted that Plaintiff has past relevant work as a security guard, and that this job was performed at a light level of exertion and did not involve exposure to concentrated respiratory irritants. (R. 15). The ALJ held that the Plaintiff is able to perform his past relevant

work as a security guard, and therefore is not under a disability as defined in the Social Security Act. Based on the finding at step four, the ALJ did not reach step five of the analysis.

Plaintiff now raises the following arguments challenging the ALJ's decisions at steps three and four:

1. The Commissioner erred in finding that Plaintiff did not equal Listing 1.04, Disorders of the Spine and Listing 3.03 for Asthma.[5]

2. The ALJ's finding that Plaintiff could perform light work as well as his past relevant work was in error.

The Commissioner contends that the ALJ's decision is supported by substantial evidence and therefore should be affirmed.

**B.    Legal Discussion**

1.  Plaintiff Did Not Meet or Equal the Relevant Listings

Spinal Impairments

Plaintiff first argues that the Commissioner erred in finding that Plaintiff did not equal Listing 1.04, Disorders of the Spine. The Court must evaluate whether the ALJ's decision that Plaintiff did not equal Listing 1.04 is supported by substantial evidence. To satisfy the criteria of a listed impairment, the condition complained of "must meet all of the specified medical criteria . . . [a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original). Plaintiff argues that, in finding that Plaintiff did not equal the Listing, the ALJ "failed to properly consider relevant

---

[5]Plaintiff appears to be arguing that the Commissioner erred in finding that Plaintiff did not equal Listing 3.03 for Asthma, although it is not entirely clear from his papers.

doctors' reports and other medical evidence." (Pl. Brf. at 13).

Under the governing regulations, Plaintiff will equal a Listing if he has impairments that create medical findings that are at least equal in medical significance to those in a Listing. 20 C.F.R. 416.926. The relevant portion of Listing 1.04 states as follows:

> **1.04 Disorders of the Spine** (e.g. herniated nucleus pulpous, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the clauda equine) or the spinal cord. With:
>
> **A.** Evidence of nerve root compression characterized by neuro- anatomical distribution of pain, limitation of motion of the spine, motor loss (Atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.*

As noted by the ALJ, "[a]n MRI of the lumbar spine performed in April 2002 showed evidence of a small disc herniation at L5-S1 with no significant central canal compromise." (R. 14). This MRI also showed moderate lateral recess narrowing at the L5-S1 level secondary to degenerative facet disease and degenerative facet disease at the L4-5 and L3-4 level. (R. 237).

Plaintiff argues that his degenerative facet disease and central disc herniation equals the first part of the Listing, and he further argues that his thecal sac indentation and lateral recess narrowing equals the requirement of nerve root compression. Particularly with respect to nerve root compression, Plaintiff states that "[t]he compression caused by the [thecal sac] indentation *can*

12

cause the thecal sac to compress the spinal cord or roots of the nerves near the spine." (Pl. Brf. at 26-28) (emphasis added) (citing http://www.medfriendly.com /thecalsac.html).  Plaintiff also argues that lateral recess narrowing *may* lead to nerve root compression.  Even presuming these statements are true, Plaintiff has pointed to no evidence showing that he actually suffers from nerve root compression, but offers only that he has a condition that may lead to it.[6]  The medical evidence showed no nerve root or spinal cord compromise.

Plaintiff also argues that he meets the second part of the Listing, which imposes the requirements of neuro anatomical distribution of pain, limitation of motion of the spine, motor loss and muscle weakness, based on his testimony at the administrative hearing that (1) he experienced numbness and pain in his right side, especially in his right leg, (R. 291), (2)  he could not stand for long periods, and (2) his back hurt after only walking one half of a block.  (R. 296).  However, Plaintiff lacked any clinical findings of the conditions required by section 1.04A.  In fact, as noted by the ALJ, the records of Dr. Lin from October 2002 showed that

> upon examination, it was noted that the claimant was in no acute distress, had a normal gait and station and had no difficulty getting dressed or undressed or getting on or off the examination table....the claimant had decreased range of motion of the lumbar spine with negative straight leg raising and 5/5 strength in both upper and lower extremities. Neurological examination was normal with no evidence of any motor or sensory deficits. An x-ray of the lumbar spine was normal. (R.14)

Plaintiff also argues that he "suffers from sensory loss as shown by the positive straight leg raising test performed on him by M. J. Badach, M. D. on February 24, 2003.  (Pl. Brf. at 28).  Plaintiff implies that a positive straight leg raising test means that there is sensory loss, but Dr.

---

[6]The only evidence Plaintiff cites to support this conclusion are links to medical information websites.  There is no evidence in the record supporting this conclusion.

13

Badach's opinion provides no support for this. Indeed, sensory loss and positive straight leg raising are separate requirements under section 104A. Also, although the ALJ did not specifically discuss Dr. Badach's findings in her decision (in particular, the positive straight leg raising test), this omission was harmless error and, accordingly, does not warrant remand. *See Walzer v. Chater*, No. 93-6240, 1995 WL 791963, at *9 (S.D.N.Y. Sept. 26, 1995) (finding that the ALJ's failure to discuss a physician's report was harmless error because the report would not have changed the outcome of the ALJ's decision). A positive straight leg raising test is not sufficient to meet or equal Listing 1.04A on its own. Consequently, the substantial evidence supports the ALJ's determination that the Plaintiff did not meet the Listing.

Asthma

Plaintiff argues that his asthma is "serious," but concedes that he has not met Listing 3.03 for asthma. Plaintiff expressly states that his asthma condition "nearly meets the Listings" and that his blood gas values "are very close to meeting the Listings." Pl. Br. at 16-17. Nevertheless, the fact remains that Plaintiff did not meet or equal the Listing. Accordingly, there is no basis to disturb the ALJ's decision with respect to his asthma condition.

2. Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ erred in finding that Plaintiff's residual functional capacity permits him to resume his previous employment. As noted above, where a claimant is found to be capable to return to his previous line of work, then he is not "disabled" and not entitled to disability benefits. 20 C.F.R. § 404.1520(e). A comparison between the Plaintiff's residual functional capacity and the requirements of his past relevant work is necessary to satisfy step four.

In the case at hand, the ALJ found that Plaintiff can perform light work with no exposure to

concentrated respiratory irritants. Light work requires the capacity to lift or carry up to twenty pounds occasionally and up to ten pounds frequently, to walk or stand up to six hours a day, and to sit for up to two hours a day. 20 C.F.R. §§ 404.1467(b) and 416.967(b); SSR 83-10. In determining residual functional capacity, the ALJ considered all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 96-7p. The ALJ considered all relevant medical evidence including reports submitted by St. Joseph's Medical Center, Dr. Lin, Dr. Dibella, Dr. Kheyfets, as well as the subjective complaints of the Plaintiff.

As mentioned above, Dr. Lin's October 16, 2002 examination noted only moderate limitations lifting heavy things, walking long distances and traveling because of back and leg pain. (R. 214). In her physical examination, Dr. Lin noted the following:

> [T]he claimant appears to be in no acute distress. His gait is normal. He can walk on heels and toes without difficulty. Squat is full. His stance is normal. He uses no assistive device at today's examination. He needs no help changing for the exam. He needs no help getting on and off the examining table. He is able to rise from the chair without difficulty.

(R. 212).

The ALJ's decision is also supported by state agency physician Dr. Dibella, who performed a Physical Residual Functional Capacity Assessment form in October 2002. (R. 217). Based on an evaluation of the record, Dr. Dibella concluded that Plaintiff was able to lift and carry fifty pounds occasionally and twenty-five pounds frequently and stand, walk, and sit for six hours per eight hour day. (R. 217).

In Dr. Kheyfets' reports from April and August 2003, as noted above, Dr. Kheyfets opined

that Plaintiff would be unable to work for a period of not more than six months and recommended pain management treatment with possible surgery. (R. 225-226). To be found "disabled," Plaintiff's impairment must cause or be expected to cause disability for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff argues that the ALJ disregarded Plaintiff's subjective complaints and failed to provide the basis for her conclusion that Plaintiff's complaint of disabling pain was not credible. The ALJ noted, however, that plaintiff refused epidural injections suggested by Dr. Kayfetts. The ALJ also stated that there was no evidence of hospitalizations or emergency room visits with respect to Plaintiff's asthma, nor was there evidence of hospitalizations or surgery to treat Plaintiff's back. Furthermore, the ALJ noted that Plaintiff's own treating physician stated that Plaintiff's disability was expected to last only six months.

The ALJ also found Plaintiff's subjective complaints inconsistent with his stated activities. Plaintiff testified that he does some cooking, shops, drives locally, socializes with family, reads, and watches television. Plaintiff also testified that he lives on the second floor and climbs the stairs to go home. (R. 283). He also testified that he is capable of lifting small objects around the home such as bags of sugar. (R. 295). Plaintiff's own testimony and the medical evidence provide substantial support for the ALJ's conclusion that Plaintiff's activities were not as restricted as he claimed. The ALJ concluded that it appears Plaintiff is capable of leading an active existence despite his allegations of pain. (R. 15).

Plaintiff did not meet his burden to show that he was unable to perform his past relevant work. *See Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150, 1153 (3d Cir. 1983). The available credible evidence demonstrates that Plaintiff can perform light work and is

16

capable of doing such in his former employment as a security guard.  The ALJ properly articulated her findings and how they led her to conclude that Plaintiff's residual functional capacity permitted him to perform his past relevant work.  The ALJ's decision is supported by substantial evidence.  Accordingly, the decision is upheld.

**IV.	Conclusion**

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's factual findings and thus affirms the Commissioner's final decision denying Plaintiff Supplemental Security Income and Disability Insurance Benefits.  An appropriate order accompanies this opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Date: August 29, 2006

Orig:	Clerk
cc.:	All parties
	File

17